IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>CHRISTOPHER L. BOHLEN,<br><br>　　　　　　　　Defendant. | 8:13CR29<br><br>MEMORANDUM AND ORDER |

　　　　This matter is before the court on the defendant's objection (Filing No. 43) to the magistrate judge's findings and recommendations (Filing No. 38) denying defendant's motion to suppress evidence and statements (Filing No. 28).  A grand jury charged the defendant with the receipt of illegal child pornography (18 U.S.C. § 2252A(a)(2)) and the possession of illegal child pornography (18 U.S.C. 2252(a)(4)(B)).  Pursuant to 28 U.S.C. § 636(b)(1)(A), this court conducts a *de novo* review of the magistrate judge's findings to which the defendant objects.  *United States v. Lothridge*, 324 F.3d 599, 600-01 (8th Cir. 2003).  The court reviewed the entire record, including the transcript of the suppression hearing ("Tr."). Filing No. 40.  The court concludes that the magistrate judge's findings and recommendations should be adopted in their entirety.

## BACKGROUND

　　　　The court will briefly summarize the facts, as there is little dispute over them. Linda Jensen ("Jensen"), a United States Postal Inspector, suspected that the defendant, Christopher L. Bohlen ("Bohlen"), may be in possession of illegal child pornography.  Her suspicion arose after learning that Bohlen's name appeared on the customer list of a suspect website that law enforcement discontinued in 2006 because it

contained child pornography. Jensen also received a tip concerning Bohlen from a postal inspector in Cleveland, but the information provided was almost two years old. Thinking this evidence too stale to obtain a warrant to search Bohlen's residence, Jensen decided to conduct a "knock and talk" operation at his home. Jensen enlisted the help of a Nebraska State Patrol Investigator, Kaleb Bruggeman ("Bruggeman"), for the operation.

Jensen and Bruggeman arrived at Bohlen's residence on June 28, 2012. They wore plain clothes and drove an unmarked car. Jensen testified that she carried a visible sidearm strapped to her hip. The pair knocked on the door of the residence, and Bohlen soon answered. Jensen and Bruggeman identified themselves as officers and asked Bohlen if they might be allowed into the breezeway between Bohlen's trailer and his garage in order to avoid mosquito bites. Bohlen agreed and invited the officers into the breezeway. Once in the breezeway, the officers told Bohlen that they came to investigate illegal activity involving a website. They then asked Bohlen if he would allow them into his residence. Bohlen walked up to his trailer and opened the door, allowing the officers to enter the premises.

Once inside, the officers asked Bohlen if he would show them where he kept his computer. Bohlen led them into a small room at the back of his trailer which housed three disconnected computer towers and one active computer. Bohlen sat down in front of the active computer. The small room's cramped layout forced the officers to stand near the doorway.

At this time, the officers began to ask Bohlen specifically about child pornography. They described the definition of child pornography and told Bohlen that

they suspected he possessed it. The officers then asked Bohlen if anything on his computer(s) might fit the definition of child pornography. Bohlen admitted that all of the computers contained such material, and he referred specifically to an image depicting a two-year-old girl performing oral sex on an adult male.

After Bohlen stated that his computers contained child pornography, the officers asked him if he would sign a form giving them consent to search the computers (Exhibit 1). Bohlen stated that he would sign the form. Bohlen accompanied the officers into the kitchen, where they read him the consent form. After the officers read the consent language to him, however, Bohlen withdrew his consent to search the computers and refused to sign the document.

At that point, Officer Jensen went through a stack of Bohlen's mail located in the kitchen.[1] She noticed what appeared to be a suspicious nudist mailing. At that time the officers asked Bohlen if there was any other child pornography in the house. He described twelve DVDs which contained additional images. The officers informed Bohlen that they needed to seize the computers and DVDs even though he refused to sign the consent to search form because the items were considered contraband. Upon hearing this, Bohlen became distraught and walked out of the trailer. Jensen followed Bohlen outside to ensure the safety of the officers while Bruggeman collected the items.

After collecting the towers and DVDs, the officers gave Bohlen a list of the items confiscated. They then left Bohlen's home with the seized items. The entire encounter lasted between thirty and forty minutes. After obtaining a valid search warrant (Exhibit

---

[1] The record indicates that Jensen went through Bohlen's mail and found a suspicious nudist letter after Bohlen refused to sign the consent to search form. This search, conducted after withdrawal of consent, is no doubt unlawful. The nudist mailing is not at issue here, however. It does not appear that the mail is part of the case against Bohlen. The parties have not raised this issue in the suppression motion.

2), the officers conducted a forensic search of the seized computers. The search revealed approximately 47,000 images of child pornography.

## MAGISTRATE JUDGE'S FINDINGS

The magistrate judge determined that Bohlen freely consented to letting the officers enter his home. Tr. at 69. The judge also found that Bohlen made all statements freely, voluntarily, knowingly, and intelligently. *Id.* at 70. The magistrate judge also noted that there is no evidence that the officers coerced any of Bohlen's admissions. *Id.* Additionally, the magistrate judge found that the officers were not required to advise Bohlen of his *Miranda* rights because he was never in custody. *Id.* at 68, 71. Finally, the judge determined that the officers had probable cause to seize the computers and DVDs due to Bohlen's admissions. *Id.* at 71. The magistrate judge stated that these seizures were "not infirmed [constitutionally] in any way." *Id.*

## DISCUSSION

The defendant objects to the magistrate judge's finding that Bohlen was not subject to a degree of restraint that would require the officers to advise him of his *Miranda* rights at the time of his admissions. Filing No. 43. It is uncontested that the officers never advised Bohlen of his *Miranda* rights. However, officers are only required to advise a defendant of these rights in custodial interrogations. *See generally Miranda v. Arizona*, 384 U.S. 436 (1966).

The only controverted issue in this case is whether Bohlen was in custody while in the small back room of his trailer, where he first admitted to being in possession of child pornography. In *United States v. Czichray*, the Eighth Circuit held that "whether a person is in 'custody' for the purposes of *Miranda* is 'whether there is a formal arrest or

restraint on freedom of movement of a degree associated with formal arrest.'" *United States v. Czichray*, 378 F.3d 822 (8th Cir. 2004) (citing *California v. Beheler*, 463 U.S. 1121, 1125 (1983)).  This determination must be based on the totality of the circumstances surrounding the interrogation.  *See id.* at 827-29.  A defendant's own residence is not "the type of inherently coercive setting that generally accompanies a custodial interrogation." *United States v. Helmel*, 769 F.2d 1306, 1320 (8th Cir. 1985). Additionally, questioning that lasts less than an hour is generally not associated with a custodial interrogation designed to overcome a defendant's will.  *See United States v. Wolk*, 337 F.3d 997, 1007 (8th Cir. 2003).

When Bohlen made his admission in the small back room of his trailer, it is clear that he was not formally under arrest.  The officers did not restrain Bohlen's freedom of movement to a degree associated with formal arrest.  There is no evidence of any actual restraints on Bohlen's movements.  The officers never prevented him from going anywhere or doing anything.  The officers did not force Bohlen into the back room of his trailer, and there is no evidence that they held him there against his will.  The officers also testified that they would have left Bohlen's residence at any time prior to his admission if he objected to their presence or asked them leave.

Since there were no actual restrictions on Bohlen's movements, the question becomes whether a reasonable person in Bohlen's position would feel restrained.  Here, the officers questioned Bohlen in his own residence.  Before entering the small back room, the officers asked for and received Bohlen's consent to proceed at multiple junctures.  The officers gave no commands to Bohlen, and their tone remained conversational throughout the encounter.  Additionally, the officers questioned Bohlen

5

only very briefly before he made his admission.  It is true that Jensen carried a weapon and that the officers stood by the door of the room.  The small size of the room necessitated this positioning, however, and a reasonable person would not perceive these factors alone as being a restraint on an individual's freedom of movement to a degree that might be associated with formal arrest.  Additionally, there is no evidence on the record that the officers coerced Bohlen into making these statements against his will.

The court notes that the officers similarly obtained an admission from Bohlen that led to the confiscation of twelve DVDs.  Bohlen stated that the DVDs contained child pornography after he withdrew his consent to search.  Bohlen's withdrawal of consent to search does not impede officers from asking additional questions of him, however.  Even though he refused to allow the officers to search his computers, Bohlen still did not ask them to leave or decline to answer further questions.  The officers were still acting lawfully when they asked Bohlen if there was any additional child pornography in the house.

## CONCLUSION

For the reasons stated above, the court finds that Bohlen was not in custody at the time he admitted to possessing child pornography.  Thus, the officers were not required to advise him of his *Miranda* rights.  This court also finds no evidence that the officers coerced Bohlen's statements in any way.  In sum, on its *de novo* review, this court agrees with the magistrate judge that the defendant's motion to suppress should be denied.

THEREFORE, IT IS ORDERED:

1. The magistrate judge's findings and recommendations (Filing No. 38 & Filing No. 40) are adopted in their entirety.

2. The defendant's motion to suppress (Filing No. 28) is denied.

3. The objections of the defendant (Filing No. 43) are overruled.

DATED this 25th day of June, 2013.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge